(164 App. Div. 38)

## PEOPLE v. GLICKMAN.

(Supreme Court, Appellate Division, Second Department.    October 2, 1914.)

1. LARCENY (§ 55\*)—SUFFICIENCY OF EVIDENCE—CIRCUMSTANTIAL EVIDENCE.

In a prosecution for grand larceny as a second offense, evidence, which was circumstantial, *held* insufficient to show that defendant was the one who stole the pocketbook from the person of the complaining witness.

[Ed. Note.—For other cases, see Larceny, Cent. Dig. §§ 152, 164, 165, 167–169;  Dec. Dig. § 55.\*]

2. CRIMINAL LAW (§ 552\*)—SUFFICIENCY OF EVIDENCE—CIRCUMSTANTIAL EVIDENCE.

In order to justify a conviction on circumstantial evidence, the circumstances must themselves be proved and not presumed, and must exclude to a moral certainty every reasonable hypothesis, except that of guilt.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1257, 1259–1262;  Dec. Dig. § 552.\*]

Burr, J., dissenting.

Appeal from Trial Term, Kings County.

Herman Glickman was convicted of grand larceny in the second degree as a second offense, and he appeals.  Reversed, and new trial ordered.

Argued before BURR, THOMAS, CARR, RICH, and STAPLETON, JJ.

Peter P. Smith, of Brooklyn, for appellant.

Edward A. Freshman, Asst. Dist. Atty., of Brooklyn (James C. Cropsey, Dist. Atty., of Brooklyn, on the brief), for the People.

STAPLETON, J.  The defendant was convicted of the crime of grand larceny in the second degree as a second offense.  The sentence was for a term of four years and nine months.  The act constituting the crime was the stealing of a pocketbook containing $24 from the person of one Thonet.  The place where the crime is alleged to have been committed was the front platform of a car forming one of a train operated upon an elevated railroad while the train was at rest at a station for the purpose of discharging and receiving passengers.  The time was about 8 o'clock in the forenoon.

The prosecution called one witness, who gave testimony concerning the commission of the crime.  That witness was the person who lost the property.  He testified that the night before, at his home, before retiring, he saw some money, certainly $24, in a pocketbook which he then placed in the right-hand side pocket of his trousers.  It was a "pretty deep, pretty big pocket."  When he arose in the morning, he could not discern that his trousers had been disturbed.  It was a "Russia closed pocketbook, with the ordinary pocket, and a place for bills in, with a clasp button on it to fasten down."  On the following morning he left his home at Rockville Center, Long Island, on a Long Island Railroad train, and arrived at East New York, where he ascended to the elevated railroad station.  Almost to the time that he stepped aboard the elevated railroad train he felt, with his hand, the pocketbook in his

pocket, and the last time he felt it could not have been more than 30 seconds before he boarded the train. He then proceeded to testify:

"Q. Now, go ahead and tell us what, if anything, took place when you boarded the train that morning. A. As I boarded (went to get aboard) the train that morning, there was a short man going right ahead of me, and when he got aboard the car, just as I was stepping on the car, he asked the guard, 'Is this the Park Row train?' The guard says, 'No, this is Delancy street.' By that he turned around, and instead of going to the side of the rail— * * * instead of going to the side of the rail—* * * ·He did not go to the side against the rail of the car, but he commenced to butt into me and jammed and jammed and jammed; that is, butt up into me until I got tired. Then I put my hands on his shoulder and pushed him to one side where the room was to go through, and told him, 'You cannot go through me; there is plenty of room that way.' * * * And then I went in, and I stepped inside the car, and, just as I got inside the car, * * * I put my hand in my pocket, first up to my pin, and then I put my hand in my pocket, and I found my pocketbook was gone. * * * It might have been half a moment—I don't think much less—or a half a minute; it may have been more than that; it was before the train started anyhow. * * * I ran right out on the platform. * * * The gates were closed; the train had started."

He positively identified the defendant as the person who collided with him on the platform. It is undisputed that the person who collided with him left the train.

This was all the evidence given to connect the defendant with the commission of the crime charged. At the time the complainant was jostled, there were other persons in proximity to him. With those persons the defendant was not connected by the evidence.

The railroad guard, who was standing astride the platforms, having a full view of the situation, testified that he did not see any jostling, and that the man who asked him whether it was a Park Row or a Delancy street train was a tall man, about half a head taller than the defendant. He was positive it was not the defendant.

The defendant was arrested some time afterwards. The defendant called two witnesses, who testified that they constituted a partnership by which the defendant was employed as a bricklayer, and that, at 8 o'clock in the forenoon of the day on which the crime was committed, he was working at Sixty-Fourth street and First avenue in the borough of Manhattan, many miles from the scene of the crime.

[1] It may be conceded that the jury had sufficient proof to support the conclusion that personal property of the witness Thonet had been taken from him between the last time he felt his pocketbook and the time when he discovered his loss; but it falls short of proving that the person who stole it was this defendant.

[2] In People v. Razezicz, 206 N. Y. 249, 99 N. E. 557, the court said:

"Whenever circumstantial evidence is relied upon to prove a fact, the circumstances must be proved, and not themselves be presumed. * * * In a criminal case, circumstantial evidence to justify the inference of guilt must exclude, to a moral certainty, every other reasonable hypothesis. Circumstantial evidence in a criminal case is of no value, if the circumstances are consistent with either the hypothesis of innocence or the hypothesis of guilt; nor is it enough that the hypothesis of guilt will account for all the facts proven. Much less does it afford a just ground for conviction that. unless a verdict of guilty is returned, the evidence in the case will leave the crime shrouded in mystery."

We do not find in this record any act of the defendant inconsistent with innocence. If a person never theretofore convicted of a crime had been convicted on the evidence in this record, it would shock the sense of justice of the average man. A former offender may not be convicted upon evidence insufficient to sustain a conviction of a person charged with a first offense. I advise reversal.

Judgment of the County Court of Kings county reversed, and a new trial ordered. All concur, except BURR, J., who dissents.